**In Re: Anne Q. BOETTCHER, Debtor.**

**LEE COUNTY BANK, a Florida banking corporation, Plaintiff,**

v.

**Anne Q. BOETTCHER, Defendant.**

**Bankruptcy No. 80–00420–BKC–SMW.**

**Adv. Proceeding No. 800186–BKC–SMW–A.**

United States Bankruptcy Court, S. D. Florida.

Dec. 1, 1980.

Jeffrey W. Warren, Tampa, Fla., for plaintiff.

Raymond B. Ray, Fort Lauderdale, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause came on to be heard upon Plaintiff's Complaint to determine that its debt is nondischargeable under Title 11 U.S.C. § 523(a)(2). The Court having heard the testimony of the witnesses, having examined the evidence presented, having observed the candor and demeanor of the witnesses, having considered the arguments of counsel and being otherwise fully advised in the premises does hereby make the following findings of fact and conclusions of law:

Plaintiff, LEE COUNTY BANK, is a state banking corporation. In November of 1977, the Debtor/Defendant, ANNE Q. BOETTCHER, filled out a personal financial statement to obtain a loan with Plaintiff. Among other things, she represented on her financial statement that as of November 1, 1977 she had collectible accounts due her of $5,000, cash value of life insurance of $60,000, stocks and bonds of $400,000, furniture, jewelry, art, etc. of $45,000, and livestock of $10,000. She further represented that her liabilities were $47,000 on notes payable to banks and $700 on accounts due others. Finally, she stated that her total income for the year ending 1976 was $35,000 and that there was no judgment or lien unsatisfied against her property nor suit pending against her.

On December 1, 1977, in reliance on the personal financial statement, Plaintiff loaned to Debtor/Defendant $58,000 secured by an assignment of her interest in a Trust Agreement dated December 22, 1938 with Marjorie Smith Lockhart as donor and Central Trust Company of Cincinnati, Ohio, as trustee, under which she is an income beneficiary for her life. The assignment was acknowledged by the Central Trust Company. The Trust Officer administering the trust advised Plaintiff that payments would be directed to Plaintiff and should average in excess of $700 per month. The purpose of the loan was to pay a $52,000 indebtedness of Debtor/Defendant at Barnett Bank of Winter Park which had been secured by a prior assignment of her interest in the trust. The balance of the loan was for personal expenses.

On December 9, 1977, Plaintiff loaned Debtor/Defendant $2,500 to complete the payment of her obligations to Barnett Bank of Winter Park.

On December 28, 1977, Plaintiff loaned Debtor/Defendant $6,500 based on her representation that the money was to prepay a commission on the sale of horses which was to be completed within six months. She said that the source of repayment of the loan would be from the sale of the horses.

On January 16, 1978, Plaintiff loaned to Debtor/Defendant $6,000 based on her representation that the money was for the purpose of paying medical expenses for her goddaughter. She represented to the Bank that the source of repayment would be from the proceeds from the sale of a yacht which had been sold. She was to receive the proceeds by June 26, 1978.

On December 2, 1977, Plaintiff loaned Debtor/Defendant $8,000 again based on the representation that the money was for medical expenses of her goddaughter. The Debtor/Defendant represented to the Bank that the source of repayment of the loan was the sale of the yacht. The loan was to be repaid on June 26, 1978.

On February 15, 1978, Plaintiff lent Debtor/Defendant another $6,500 again based on the representation that the money was for medical expenses for her goddaughter and would be repaid from the proceeds from the sale of the yacht on June 26, 1978.

On March 3, 1978, Plaintiff lent Debtor/Defendant $8,500 based on the representation that the money would be used to purchase an automobile she was leasing and that the loan would be repaid from the proceeds of the sale of the yacht on June 26, 1978.

On March 3, 1978, Plaintiff lent Debtor/Defendant $8,000 to pay taxes based on the representation that the money would be repaid from the proceeds of the sale of the yacht on June 26, 1978.

On May 10, 1978, Plaintiff lent Debtor/Defendant $19,500 to pay a loan for which she was obligated to the Barnett Bank of Winter Park secured by a boat she lived on and which she was to acquire. The loan was to be paid from the proceeds from the sale of the yacht on June 26, 1978.

On June 26, 1978, the Debtor/Defendant advised the Plaintiff that the proceeds from the sale of the boat had been tied up in her son's estate and that the Bank would be paid when those proceeds were received. At that time each of the foregoing notes, with the exception of the original note for $58,000, were consolidated into one note for $65,600.

During the period from December 1, 1977 through June 26, 1978, Debtor/Defendant worked with Plaintiff's Trust Department to establish an inter vivos trust to be funded primarily from the proceeds from the sale of her yacht. Although she established a trust account with Plaintiff, the only funding for the account was the initial $1,000 deposit.

Debtor/Defendant defaulted in making payments to Plaintiff on the various loans, and on June 19, 1979 Plaintiff recovered a Summary Final Judgment against Debtor/Defendant in the amount of $124,957.33.

At trial Plaintiff established and the Court finds that the Debtor/Defendant did not have a goddaughter for whom medical expenses were required, did not purchase an automobile, did not have title to the boat she was living on transferred to her name, she never had an interest in a yacht from which she represented to the Bank she could repay these loans and her son did not die. In fact, Debtor/Defendant acknowledged that the true purpose of these loans was to support her gambling habit.

Plaintiff also established and the Court finds that Debtor/Defendant submitted a materially false written statement to the Bank with the intent to deceive in that she did not have a collectible account due her of $5,000, she did not have cash value in life insurance of $60,000, she did not have stocks and bonds worth $400,000, and she did not have annual income for 1976 of $35,000. The court further finds that she understated her liabilities, and she failed to disclose an unpaid $8,799.47 federal tax lien for unpaid income taxes for the years 1973, 1974, 1976 and 1977.

§ 523(a)(2) of the Bankruptcy Code provides:

A discharge under § 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtors or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

The Court finds that the written statement submitted to Plaintiff was materially false, that such statement was made in

reference to Debtor/Defendant's financial condition, that Plaintiff relied thereon, and that Debtor/Defendant submitted the materially false written statement with the intent to deceive.

The Court further finds that the loans were obtained by false pretenses or representations amounting to actual fraud in that the representations regarding the purposes of the loans and the source for repayment of the loans were knowingly and fraudulently made and were relied upon by Plaintiff in making the loans.

It is undisputed that the amount owed, including interest, is $125,726.94 as of the date of this Order.

As is required by Bankruptcy Rule 921(a), a separate judgment will be entered in favor the Plaintiff and against Defendant in the amount of $124,726.94 and that claim is declared non–dischargeable under 11 U.S.C. § 523(a)(2). Costs will be taxed on motion.